**BANKERS' LLOYD'S v. CHAMNESS.**

No. 1998.

Court of Civil Appeals of Texas. Beaumont. Oct. 22, 1930.

Rehearing Denied Nov. 5, 1930.

Jno. S. Redditt, of Lufkin, for appellant.

Brazil & Musselwhite, of Lufkin, for appellee.

O'QUINN, J.

Chamness brought this suit in the district court of Angelina county to set aside an award of the Industrial Accident Board. The award was made October 17, 1929, and was in his favor for permanent total incapacity at the rate of $10.38 per week for a period not to exceed 401 weeks, beginning August 5, 1929, the date of the injury for which he claimed compensation. The appeal and prayer of Chamness was for the purpose of receiving compensation in a lump sum, which the board had refused. His petition contained the usual and necessary allegations in a suit of this nature. The defendant answered by general demurrer and general denial. The case was tried to the court without a jury, and judgment rendered in favor of appellee setting aside the award of the Industrial Accident Board, and granting him compensation as for permanent total incapacity at the rate of $8.65 per week for 401 weeks, and that same should be paid in a lump sum less a discount of 6 per cent., the judgment so awarded being for the sum of $2,836.75. This appeal is from that judgment.

The judgment appealed from reads:

"Be it remembered that on this the 14th day of November, A. D. 1929, came on to be heard

in its regular order the above entitled and numbered cause and the parties having announced ready for trial, and a jury being waived, all matters of law as well as of fact were submitted to the Court, and after hearing the pleadings of the parties and the evidence introduced thereon and argument of counsel had, it is the opinion of the court and it is so found by the Court:

"That heretofore, to-wit, on the 6th day of August, A. D. 1929, Scott Shambaugh of Lufkin, Angelina County, Texas, was a subscriber to the Employers' Liability Act of Texas, through and by virtue of a policy of compensation insurance carried with the defendant, Bankers Lloyds Insurers, insuring the employees of Scott Shambaugh against loss on account of accidental personal injuries arising out of and sustained in the course of their employment and on said date the said Scott Shambaugh had in its employ the plaintiff, A. B. Chamness, who sustained personal injuries while engaged in the course of his employment, on the aforesaid date, said injuries arising out of his employment on the aforesaid date.

"The Court further finds that plaintiff, A. B. Chamness, had not been employed in the same or similar employment as that in which he was employed at the time he sustained the said injuries for a period of substantially the whole of a year prior to the date of his injuries and that the wages of other employees engaged at the time of his injuries in and near Lufkin, Angelina County, Texas, the place where plaintiff sustained his said injuries, for a period of substantially the whole of the preceding year prior to the date of plaintiff's said injuries were $2.50 per day, and that such wages upon which plaintiff's compensation should be based is just and fair to the both parties to this cause, and that the daily wage of $2.50 per day is the proper daily wage upon which to base plaintiff's compensation awarded to him herein, and that the plaintiff, A. B. Chamness, is entitled to compensation at the consequent rate of $8.65 per week and it is so ordered, adjudged and decreed by the Court.

"The Court further finds that the plaintiff, A. B. Chamness suffered total and permanent incapacity for the performance of labor as a direct and proximate result of said injuries sustained by him on August 6th, 1929, and that the plaintiff has been totally incapacitated for the performance of labor since said injuries and will hereafter at all times be totally and permanently incapacitated for the performance of labor; that he is therefore entitled to recover from and have paid to him by the defendant, Bankers Lloyds Insurers, compensation at the fixed rate of $8.65 per week, same beginning to accrue on August 6th, 1929, and continuing thereafter for the full and final period of Four Hundred and One (401) weeks.

"The Court further finds that great hardship and manifest injustice will result to plaintiff unless his compensation is paid to him in a lump sum.

"The Court further finds that there is now matured and due plaintiff 14 weekly installments of compensation at the rate of $8.65; that Three Hundred Eighty Seven (387) installments of compensation will mature hereafter from week to week, beginning the 12th day of November, 1929, and one each week for Three Hundred Eighty Seven (387) weeks consecutively thereafter; but the Court having found that manifest injustice and great hardship will result to the plaintiff unless the compensation awarded herein by this judgment is paid in a lump sum, it is therefore ordered, adjudged and decreed by the court that the entire compensation awarded, adjudged and decreed to the plaintiff herein be paid in a lump sum, less six per cent. compound interest per annum discount on the unmatured payments which amount of unmatured payments when so discounted amounts to $2714.65, making a total amount of compensation awarded, adjudged and decreed to the plaintiff herein in the sum of $2836.75, after allowing a discount of six per cent. compound interest per annum on the unmatured payments.

"The Court further finds that the award made and entered by The Industrial Accident Board of Texas herein on the 17th day of October, A. D. 1929, ought to be set aside, and it is so ordered, adjudged and decreed by the Court that said award ought to be and it is hereby set aside and held for naught.

"It is therefore ordered, adjudged and decreed by the Court that the plaintiff, A. B. Chamness, do have and recover of and from the defendant, Bankers Lloyds Insurers, the sum and amount of Two Thousand Eight Hundred Thirty Six and 75/100 ($2,836.75) Dollars, together with six per cent. interest per annum thereon from the date of this judgment until paid, together with all costs of this court.

"It is further ordered, adjudged and decreed by the Court that execution may issue in behalf of the plaintiff, A. B. Chamness to enforce the terms and provisions of this judgment."

Appellant does not complain of any fact finding made by the court, nor as to the amount of the award, nor as to its payment being made in a lump sum, but its complaint is wholly as to the manner of the finding of the daily and weekly wages, the insistence being that same were not found in accordance with the law. As shown by the judgment, the court found that Chamness had not been employed in the same or similar employment as that in which he was engaged when he received his injuries for substantially the whole of a year prior to the date of his injuries, and he further found that the wages of other employees engaged in the same or a similar em-

**1110**

ployment in the same or neighboring vicinity at the date of appellee's injury, and who had worked for substantially the whole of the preceding year, was $2.50 per day. On this finding the court, under first subdivision 2 of section 1, article 8309, R. S., found $8.65 to be the weekly compensation to which appellee was entitled.

Appellant contends that the manner of finding the average weekly wage of appellee was error, for in that the evidence showed that appellee had worked for substantially the whole of the preceding year for his employer, at various periods and for varying wages, and that his total earnings for that period should have been shown, and that amount divided by 52 to arrive at his actual weekly earnings, and the weekly compensation thus found in accordance with the holding in Howard v. Texas Employers' Insurance Ass'n (Tex. Com. App.) 292 S. W. 529, and Petroleum Casualty Co. v. Williams (Tex. Com. App.) 15 S.W.(2d) 553. Under the facts, we do not believe these cases apply. In the Howard Case the injured employee had worked for the same employer for more than twelve months immediately preceding his injury at various jobs and at various wages. In the Williams Case the injured employee had worked for his employer 363.6 days during the twelve months next preceding his injury, at various kinds of labor and at different wages. Not so in the instant case. The rule that was held to control in the cited cases does not apply to the facts of the instant case. Chamness had not worked in the employment in which he was working at the time of his injury for his employer or for any other employer for substantially the whole of the year immediately preceding his injury, but there were other employees of the same class, that is, doing the same kind of work, working for other employers in the same place, Lufkin, Tex., who had worked at such work for the whole of the immediately preceding year and whose wages were shown to be $2.50 per day. This clearly, we think, brought the determination of appellee's annual wages within and under first subdivision 2 of section 1 of article 8309, R. S., as was done by the court. But appellant contends that appellee had worked some 310 days for his employer, Scott Shambaugh, during the preceding year. We do not think the evidence so shows. In part, Chamness testified: "I worked for the Scott Shambaugh paving company. I was working for them about August 6th of this year. I had been working for them about 11 months, I reckon. It was about the 13th or 14th day of September a year ago that I began, and worked until I got hurt, which was on the morning of the 6th of August. The work that I had been doing for Scott Shambaugh at that time, was that I was nightwatchman at the plant; I had been nightwatchman for hardly a week. The other kind of work that I had been doing was working in the daytime at what is called 'fine grading.' I had nightwatched for him about 6 months before that time. They paid me $15.00 per week for nightwatching there."

On cross-examination he testified: "I was nightwatching for Scott Shambaugh. When I first hired to him I worked on the fine grade gang ahead of where they poured the concrete. I worked ahead of the mixer. I went to work for him on the 13th of September, 1928, I think. I worked steadily at this until I was hurt except for a few days. I worked in the curb and gutter gang a few days. As to whether I did not lose any time, I will say when I laid off I lost time. As to how long I had been doing this nightwatching for Scott Shambaugh I will state that I nightwatched between six and seven months last winter. On this particular time just preceding the time the alleged injury occurred, I commenced on Wednesday night before."

J. R. Jones, a witness for appellant, testified that he had been in the employ of Scott Shambaugh in charge of the office and keeper of the record books for three years; that Chamness, appellee, was night watching at the time of his injury, and was getting $15 per week working 7 days per week. That they had several night watchmen at different times, and that their average wages were $15 per week or $2.15 per night. He further testified: "He was just working a short time as nightwatchman; at that particular time he worked six days. Before that he had been regular nightwatchman for four or five months, and then he worked at other employment for my company." This is practically all of the testimony going to show how long Chamness had worked for his employer. He began work for Scott Shambaugh about September 13, 1928, and was variously employed at different jobs up to August 6, 1929. So he worked for about ten and a half months, and it does not appear that he was working 7 days per week all this time. The court's finding that he had not worked for his employer for substantially the whole of the year preceding his injury is amply supported. This being true, we think the court properly proceeded to admit proof of what other employees of the same class, that is, doing the same or similar work, in the same or neighboring vicinity, and who had worked for the whole of the immediately preceding year, received for their services, and to thus find under 1st subdivision 2 of section 1 of article 8309, R. S., the average weekly wage of appellee.

But appellant says that the court erred in admitting the testimony of Lee Zeigler, who testified that he was manager of the Martin Wagon Company located at Lufkin, and that it had a regularly employed night watchman at $2.50 per night. He also testified that at their mill plant, run in connection with the wagon plant, they had a night

watchman, who was paid $2.50 per night. That that was the regular pay for such work. Appellant also urges that the admission of the testimony of M. L. Wilkerson, who testified that he was connected with the Lufkin Foundry & Machine Company and that they regularly employed a night watchman, and paid him $3.70 for thirteen hours' work, was error. This testimony was admitted over the objection of appellant that it was not the best evidence for proving wages; that it was not the same employment, and was not proper proof of wages under the compensation law; and that it was not shown the employment the witnesses were testifying to was similar to that of appellee. We think the objections were properly overruled. The work being done by appellee was night watching. That of the other employees sought to be shown was night watching. Chamness received $15 per week. The night watchman at the wagon plant and at the mill plant received $15 per week. The night watchman at the foundry received more but worked considerably more hours—thirteen—than the average night worker. So that his wages, when averaged by hours, was near the same. But, in any event, as we have before said, appellant has not complained of any fact finding made by the court, and he found the average wages of one employed in the same or similar work in the same place or neighboring vicinity to be $2.50 per day, and that such finding was just and fair to all parties, and that same should be made the basis for the computation of appellee's compensation. In this we can find no error prejudicial to appellant.

Moreover, we think the judgment should be affirmed for in that appellant makes no contention that the judgment is erroneous, except as to the method of computation of appellee's compensation. In other words, appellant concedes that appellee was an employee of Scott Shambaugh on August 6, 1928; that on that date he was injured while in the course of his employment; that appellant was the insurer under the Employers' Liability Act; that jurisdiction of the court is properly shown; that the court correctly found that appellee was totally and permanently incapacitated for the performance of labor because of the injuries he sustained; and that his compensation was properly awarded him in a lump sum and the proper discount given. Appellee's weekly wage at the time he was injured was $15. If his compensation were based on 1st subdivision 3 of section 1 of article 8309, as we understand appellant to contend it should be, then appellee would be entitled to 60% of $15 per week or $9. If calculated, as it was, under 1st subdivision 2 of section 1 of article 8309, it amounts to $8.65 per week, 35 cents per week less than if calculated under subdivision 3, and so much in favor of appellant. Appellant does not contend that the amount of compensation awarded appellee is excessive, or that it is unjust or unfair. It merely complains that the method of computation was wrong. No injustice to appellant being shown, and believing that the court's findings and award are correct, the judgment should be affirmed, and it is so ordered.

Affirmed.