## CASUALTY RECIPROCAL EXCHANGE
## v. CAIN.
### No. 1396.

Court of Civil Appeals of Texas. Waco.
June 22, 1933.

Rehearing Denied Sept. 20, 1933.

E. C. Gaines, of Austin, and Jos. W. Hale, of Waco, for appellant.

H. L. Knop and Conway & Scharff, all of Waco, for appellee.

GALLAGHER, Chief Justice.

This is a compensation case. Appellee, Gertrude Cain, was the employee, Waco Packing Company the employer, and appellant, Casualty Reciprocal Exchange, the insurance carrier. Appellee, while engaged in the discharge of duties pertaining to her employment, was injured on November 10, 1931.

She presented a claim to the Industrial Accident Board and an award of compensation was made thereon. She was dissatisfied with such award and in due time and manner, by her next friend, brought suit in the district court to set the same aside and to recover compensation for total permanent disability. She further alleged that the payment of compensation in weekly installments would not enable her to discharge her obligations and supply her necessities and that manifest hardship and injustice would result to her unless the compensation recovered should be paid in a lump sum. Appellant answered by general denial.

The case was tried to a jury and submitted on sixteen special issues. The findings of the jury in response thereto were favorable to appellee, and the court rendered judgment thereon in her favor against appellant for the lump sum of $2,366.39. The sufficiency of such findings to authorize such judgment is not assailed, except as to an alleged conflict therein, which will be hereinafter discussed.

### Opinion.

■ Appellant presents a proposition in which it contends that the findings of the jury in this case are in irreconcilable conflict and are therefore insufficient to support the judgment rendered thereon. The supposed conflict is between the findings of the jury that appellee was totally and permanently disabled for work by the injuries complained of by her, and the further finding that appellee did not suffer any temporary total disability as a result of such injuries. The basis of all these findings was disability. The distinction involved was between permanent total disability and temporary total disability. The jury having found that appellee was totally and permanently disabled, the further finding that she did not suffer temporary total disability was wholly consistent and not in conflict therewith, as contended by appellant. Casualty Reciprocal Exchange v. Stephens (Tex. Civ. App.) 25 S.W.(2d) 180, 183, par. 10, affirmed (Com. App.) 45 S.W. (2d) 143.

■ Appellant presents a proposition in which it contends that there is no evidence sufficient to authorize the submission of an issue of the average weekly wage of appellee. The court submitted such issue, and the jury found in response thereto that her average weekly wage was $7.21. Appellee was at the time of her injury employed in picking turkeys for the Waco Packing Company and had been so engaged at that time only a day or two. The witness Butler testified that he was the superintendent of the plant of the employer where appellee was injured; that employees picking turkeys did not work the entire year; that it was a seasonable occupation and employees only worked during the turkey season; that other fowls were not picked during such season but were picked at other seasons of the year; that it had employees who were engaged in picking some kind of fowls practically the entire year; that picking fowls was known as piecework and no record was kept of the amount earned by employees day by day or week by week, but that an average employee would earn from $1 to $1.25 a day. Appellee testified that she worked at such occupation only about five months out of the entire year preceding her injury. The undisputed facts excluded the application of subdivision 1 of the statutory definition of average weekly wages. The court did not assume to pass upon the sufficiency of the evidence to justify a finding under subdivision 2 of such definition, but submitted the same to the jury for consideration. The court told them in that connection that if they were unable to determine the average weekly wage by that rule, they might determine the same in any manner they might deem just and fair under the evidence before them. We do not deem it necessary to set out such explanatory instruction in full, but it was almost a literal copy of the charge given on such issue by the trial court under a similar state of facts in the case of Zurich General Accident & Liability Insurance Co. v. Thompson (Tex. Civ. App.) 47 S.W.(2d) 663, 665. The Court of Civil Appeals approved such charge and the Supreme Court dismissed an application for writ of error. Error, if any, in the manner in which the average weekly wage of appellee was determined is, however, rendered harmless by the fact that the statute provides that where an employee recovers compensation for total incapacity, the insurance carrier shall pay such employee not less than $7 per week, and the court based appellee's recovery on such provision. R. S. article 8306, § 10. See, also, Texas Employers' Insurance Ass'n v. Kelly (Tex. Civ. App.) 56 S.W.(2d) 1108, 1110, par. 2; Bankers' Lloyd's v. Chamness (Tex. Civ. App.) 31 S.W.(2d) 1108, 1111, par. 5.

■■ Appellant presents a proposition in which it contends that the court erred in permitting appellee to prove by her mother as a witness in her behalf that appellee's father was dead, and to give the number, names, and ages of her children. Appellee sought to require appellant to redeem its liability to her for compensation by the payment of a lump sum, as provided by Revised Statutes, article 8306, § 15. Appellee was at the time of trial a minor nineteen years of age. There was no contention that she had any property or means of support. Appellant's bill of exceptions merely shows that appellee's mother was permitted as a witness to testify that appellee's father was dead, and to further testify that she had one son 21 years old and five girls, aged respectively, 22, 19, 16, 12, and 5 years. Appellee being a minor, obliga-

tion for her support rested upon her father, if living. It was therefore pertinent to show that he was dead and that such obligation then rested on the witness and that she also had the burden of maintaining other minor children. The testimony complained of was pertinent on the issue upon which it was introduced. Texas Employers' Insurance Ass'n v. Beckworth (Tex. Civ. App.) 42 S.W.(2d) 827, 828, par. 1; Herzing v. Texas Employers' Insurance Ass'n (Tex. Com. App.) 17 S. W.(2d) 1046, par. 2. Appellee cites in this connection excerpts from the statement of facts, which show that appellant introduced affirmative evidence showing that appellee's father was dead and that he was killed in an accident only a short time before appellee sustained her injuries. Appellant therefore cannot complain of the testimony concerning the death of appellee's father, although admitted over its objection. Norwich Union Indemnity Co. v. Smith (Tex. Com. App.) 12 S.W.(2d) 558, 559, par. 1; Houston E. & W. T. Ry. Co. v. Jackson (Tex. Com. App.) 299 S. W. 885, 887, par. 3, and authorities there cited.

Appellant presents a proposition in which it contends that the court erred in refusing to set aside the verdict and grant a new trial on the ground of improper argument by counsel for appellee. The testimony showed that the injury sustained by appellee resulted from a fall upon a cement floor. The testimony concerning the existence of injury and the nature and extent thereof was conflicting. The symptoms disclosed by the testimony, while in part objective, were largely subjective. Appellant contended that appellee's fall on said cement floor was intentional and for the purpose of forming the predicate for pretended injury and for claiming and collecting compensation therefor, and that appellee's injuries were pretended and her claim for compensation fraudulent. The argument of appellee's counsel complained of herein purported to be and was in the main, if not entirely, in reply to argument presented to the jury by counsel for appellant. No objection to the argument so complained of was made at the time it was presented to the jury. Such complaint was presented for the first time in the motion for new trial. The court approved appellee's bill of exceptions to said argument, but appended thereto as an explanation and qualification thereof the substance of the speech of appellant's counsel to the jury, to which the argument complained of was a reply.

The recital of the speech of appellant's counsel covers six pages of the transcript. Only a very brief outline of the same can therefore be given. Counsel for appellant told the jury, in substance, that in his opinion this was a sham case; that appellee herself was a sham; that a certain physician who had testified in her behalf was a sham

and that he had engineered and financed the case; and that if he had not done so it would never have been brought. He further told the jury that it was the practice of appellant to make a private investigation of all claims filed against it, and if such investigation disclosed an injury, to pay the claim in full; that appellant had paid out great sums of money on doubtful cases, in which the several claimants, upon receiving payment, immediately forgot their injuries and went about their usual duties. He further stated that appellant had made a very thorough private investigation in this case; that its general attorney had come here for that purpose; that he went to the hospital where appellee was carried immediately after her injuries and treated therefor, and inquired concerning the same, and that appellant had determined from such investigation that appellee did not suffer any accident and did not suffer any injury from the pretended accident; that appellant not only failed to pay appellee any compensation, but positively refused to do so because it had determined that this was a framed case and that though appellant had paid the doctor and hospital bills, it did not thereby admit liability but, on the other hand, denied liability and denied that appellee had ever suffered either an accident or any injury. He further stated that such investigation developed that appellee on another occasion had received a slight injury to her hand and had collected compensation therefor, and that appellee had been educated in filing claims and collecting compensation for injuries; that appellant had determined from such investigation that she and her family had plotted to frame an accident and frame an injury as a result thereof, and then to collect compensation for such pretended injury; that the entire case was a fraud and a sham, conceived and executed for the purpose of extracting money from appellant; that such practice was common among people of her class. He further stated that the testimony had developed that appellee was only earning about $1 a day at the time of her pretended injuries and that she was not employed all the time, and that her total weekly earnings would be less than $6 per week, but that if the jury found that she was totally and permanently incapacitated, appellant would have to pay her $7 a week, which was more than she could earn; that both she and her family knew and recognized this state of affairs, and that this was the reason they had plotted and framed this case against appellant. He in that connection appealed to the jury, in event they should find appellee was incapacitated, not to find total incapacity but only partial incapacity, and thereby reduce the amount of compensation she could draw below the amount she was earning before her purported injuries, and thus give her an incentive to get up and go back to

work. He further stated that in the course of such investigation appellant had determined that Virginia Calvert, one of appellee's witnesses, who fell and received injuries at the same time and place as appellee, did receive some character of injury and that it had paid her compensation therefor, but that in the same connection appellant had determined that appellee was not injured and therefore did not pay her claim, and cited the same as an argument to show that appellant paid meritorious claims but refused to pay pretended ones. He further stated that he had tried many cases where, as soon as judgment for compensation was recovered and collected, the supposed injured party would "pick up his bed and walk," and that in his opinion, if appellee recovered in this case, she would immediately discard her crutch and literally "pick up her bed and walk." He further, by way of illustration, referred to a famous railroad case where the party claimed to be paralyzed, and after recovering and collecting a very large judgment, immediately got well, and said that appellee's case was parallel to that one. He closed with a dramatic gesture, pointing to a picture on the wall of the courthouse representing the surrender of Santa Anna to General Houston at San Jacinto, and asserted that the noble Texans who gave their lives on that battlefield did so that we of the present day could enjoy life, liberty, and the pursuit of happiness, and that those sleeping heroes, if they could come back from their graves and see the way that some people in this state were bleeding big corporations, and especially insurance companies, would turn their heads away in shame and feel that they had given their lives in vain. He pleaded with the jury to tell appellee by their verdict that said heroes had not fought, bled, and died that she might practice hypocrisy and sham upon the people of this state.

The excerpt from the speech of counsel for appellee, as shown by appellant's bill of exceptions, covers only a page and a half of the transcript. We give only a brief summary of the substance thereof. It appears from appellant's bill that appellee's counsel referred to the fact that counsel for appellant said that appellee, upon termination of the case, would pick up her bed and walk, and that the whole matter was a sham and that he had told about damage suits for fictitious injuries which other people had brought. Appellee's counsel then stated that counsel for appellant did not say anything about the number of cases where the insurance carrier, when an employee was injured, paid him nothing; that he did not say anything about trying to starve these people to death so he could pay them a few hundred dollars and get rid of the case; that he did not tell that appellant's general attorney came down here, not to pay appellee the little compensation she was entitled to, but to try to beat her out of it; that he did not tell about the numbers and numbers of cases where appellant tried to beat down injured employees in order to save money; that he only pictured appellee as a sham and a hypocrite and her little family, with the father in the grave, as trying to perpetrate a great big fraud on the insurance company. Counsel for appellee in that connection told the jury that appellee's wages were small and that they could not award her very much; that she was a nineteen year old girl and that the jury could not take her injuries away and put her back in the bosom of her family as she was before the accident, but that they could give her a little money with which she could procure medical and hospital treatment and whereby she would not have to borrow money when she got hungry during the next year or so; that they could write a verdict saying that she was not a sham and that he did not believe they would place such a stigma upon her character. He invoked a verdict in appellee's favor, stating that a fair and impartial verdict was all he asked for.

Appellant's speech, as shown by the judge's qualification of its bill of exceptions, was highly improper and reasonably calculated to prejudice the jury in their consideration of the issues involved in appellee's case. When appellant's counsel elected to present such argument to the jury, he in effect invited a discussion thereof by appellee's counsel. Having been the first to transcend the limits of permissible argument, he is in no position to complain of a reply thereto in kind. Casualty Reciprocal Exchange v. Stephens (Tex. Com. App.) 45 S.W.(2d) 143, 148, par. 15; Gulf Refining Co. v. Rogers (Tex. Civ. App.) 57 S.W.(2d) 183, 186, par. 7; Heidenheimer v. Thomas, 63 Tex. 287, 292; Texas & P. Railway Co. v. Garcia, 62 Tex. 285, 290; Paschal v. Owen, 77 Tex. 583, 587, 14 S. W. 203. Counsel for appellee did not abuse his privilege in making the reply that he did.

We have examined all the alleged errors presented by appellant. None of them justify or require a reversal.

The judgment of the trial court is affirmed.