## TEXAS EMPLOYERS INS. ASS'N v. McNORTON.

### No. 12210.

Court of Civil Appeals of Texas. Dallas.

March 7, 1936.

Rehearing Denied April 4, 1936.

Ramey, Calhoun & Marsh and Ben A. Harper, all of Tyler, and Preston Calvert, of Grand Saline, for appellant.

White & Yarborough, of Dallas, and Paul H. Stanford, of Canton, for appellee.

LOONEY, Justice.

All preliminary steps required by statute having been taken, Hess D. McNorton, employee of Morton Salt Company of Grand Saline, Tex., filed this suit against Texas Employers Insurance Association, the insurance carrier, as an appeal from the final award of the Industrial Accident Board, on a claim for compensation for accidental injuries sustained by the employee in the course of his employment. The insurance carrier, appellant herein, appealed from the judgment of the court below, rendered upon jury findings to the effect that the injuries sustained by appellee were total and permanent, allowing a lump-sum recovery at $11 per week for 401 weeks, less $443 compensation theretofore paid by appellant at the rate of $11.08 per week.

Appellee was mining salt 700 feet below the surface, and at the time of the accident was drilling a hole in a large lump of salt, elevated some eight or ten feet above the floor of the mine, which, becoming disconnected, slid down a declivity, carrying appellee along, fell upon and severely

mashed and bruised his feet, rendering it necessary to amputate the big, second, and third toes from his left foot, also the third and fourth toes from his right foot.

Appellee described at great length his injuries, alleging in substance that the bones of his feet were thrown out of alignment, and whether standing or walking he suffered physical pain; that because of the malalignment, other portions of his body were affected, his wounded feet became infected, the infection getting into his blood stream, causing anemia, involved and affected his entire body, resulting in a total permanent incapacity. In the alternative, appellee alleged that if his incapacity was not total and permanent, nevertheless he had been totally incapacitated since receiving the injury, and will continue in such condition for an indefinite period of time; and alleged further that if not totally incapacitated for as long a period as 401 weeks, yet he would sustain a partial permanent incapacity following the period of total incapacity, wherefore he prayed for compensation accordingly.

Aside from certain exceptions, the effect of appellant's answer is a general denial and a special plea, alleging that its liability to appellee, if any, arose from the loss of toes, and that appellant was ready and willing to pay appellee the amount it may owe under the provisions of law for such injuries, but refusing to accept such compensation in settlement, appellee exaggerates, distorts, and enlarges upon his injuries, and is claiming a sum of money far in excess of the amount justly due; further alleging that, after appellee had fully recovered from the amputation of his toes, and at a time when he was well and physically able to work, his employer, Morton Salt Company, in good faith offered him employment at the same wage which he received prior to his injury, which he could have performed without physical discomfort, but being actuated solely by a desire to exaggerate his alleged injuries and extort money wrongfully refused such employment.

The case was submitted on special issues; the answers of the jury were in favor of appellee, for whom the court rendered the judgment heretofore mentioned.

In view of the questions raised, we deem it important to set out, somewhat at length, the questions propounded and the findings of the jury. Following issues Nos. 1, 2, and 3, to which the jury answered that appellee, an employee of the Morton Salt Company, was injured on August 13, 1934, in the course of his employment, the court submitted special issue No. 4, as follows: "Special Issue No. 4: Do you find from a preponderance of the evidence that plaintiff, Hess D. McNorton, sustained total incapacity on or about the 13th day of August, 1934?" To which the jury answered: "Yes." Issue No. 5 was then submitted, as follows: "If you have answered Special Issue No. 4 by 'yes' then you will answer the following special issue; otherwise you need not answer the same: Do you find from a preponderance of the evidence that said total incapacity, if any, sustained by plaintiff, Hess D. McNorton, on or about the 13th day of August, 1934, is permanent? Answer 'yes' or 'no.'" To which the jury answered: "Yes." In answer to issue No. 6, the jury found that appellee's incapacity naturally resulted from the injuries sustained, and in answer to No. 7 found facts justifying a lump-sum payment, which was followed by special issue No. 8, as follows: "Special Issue No. 8: If you have answered Special Issues Nos. 4 and 5 by 'yes,' then you will not answer Special Issue No. 8; but, if you have answered Special Issue No. 4 by 'yes' and Special Issue No. 5 by 'no,' then you will answer Special Issue No. 8: How many weeks of total incapacity, if any, do you find from a preponderance of the evidence plaintiff, Hess D. McNorton, sustained?" Which was not answered, as directed by the court, and this was followed by subsidiary issues Nos. 9, 10, 11, and 12, which were also left unanswered under the direction of the court, the unanswered issues being in regard to the partial incapacity, whether or not, sustained by appellee at the end of his total incapacity; whether such partial incapacity would be permanent; the number of weeks of its duration, and the percentage thereof.

Appellant insists that the court erred in overruling its objections to the conditional submission of issues Nos. 8, 9, 10, 11, and 12, heretofore mentioned, and in refusing its request for the unconditional submission of these issues, contending that it was entitled to have each of these pertinent defensive issues separately and unconditionally submitted and answered by the jury irrespective of how they answered any other issue.

On this question, the decisions of our appellate courts are in irreconcilable conflict.

Recognizing such conflict, Judge Gallagher, in Traders', etc., Co. v. Forrest (Tex. Civ.App.) 78 S.W.(2d) 987, 988, said: "We find it difficult to reconcile the authorities on the issue raised by appellant's assignments, and have decided not to attempt to do so," and, after reviewing several cases, concluded: "We therefore, in deference to the authorities above cited, hold that the court erred in not submitting separately and unconditionally appropriate issues pertinent to appellant's contention that appellee's incapacity was only temporary." In Traders', etc., Co. v. Babb (Tex.Civ. App.) 83 S.W.(2d) 778, 780, Judge Higgins, also recognizing the conflict mentioned by Judge Gallagher, said: "In a number of cases arising under the Workmen's Compensation Act it has been held the defendant is entitled to an affirmative submission of its defensive issues that the plaintiff's incapacity is temporary or partial rather than permanent or total, though such issues are negatived by previous findings of permanent and total incapacity. Traders' & General Ins. Co. v. Forrest (Tex.Civ.App.) 78 S.W.(2d) 987; Texas Indemnity Ins. Co. v. Allison (Tex.Civ. App.) 75 S.W.(2d) 999; Texas Employers' Ins. Ass'n v. Kelly (Tex.Civ.App.) 71 S.W.(2d) 901; Indemnity Ins. Co. v. Boland (Tex.Civ.App.) 31 S.W.(2d) 518. On the other hand, there are cases which support the view that since the finding of permanent total incapacity negatives the issues of temporary or partial incapacity the conditional submission of the latter issues is sufficient."

However, Judge O'Quinn, speaking for the Beaumont Court, in Texas Employers' Ins. Ass'n v. Hilderbrandt (Tex.Civ.App.) 80 S.W.(2d) 1031, 1033, announced that it is an established practice, in submitting alternative issues, to instruct the jury where one is answered in a specified way not to answer the other. Applying this doctrine to the case under consideration, he said: "The answer to issue 24 was conditioned upon issue 23 being 'Yes,' and was not answered. Answer to issue 25 was conditioned upon issue 24 being 'No,' and, as it was not answered, no answer was given to issue 25. Answer to issue 26 was whether the disability to the left leg was permanent. This the jury answered 'Yes.' Answer to issue 27 was conditioned upon issue 26 being answered 'No,' but as it was answered 'Yes,' 27 was not answered. These issues were as to specific

injuries, and, the jury having already found in their answer to special issues 8, 9, and 10 that appellee's injuries resulted in total and permanent incapacity, or disability, which issues were properly submitted, issues 23 to 27 were immaterial because unnecessary to a disposition of the case. After the jury found that appellee was totally and permanently incapacitated, it was not necessary for them to find the length of time or the extent of incapacity that may have existed by reason of the injury to specific parts of his body. Casualty Recip. Exchange v. Stephens (Tex.Com. App.) 45 S.W.(2d) 143, 147, 148; Casualty Recip. Exchange v. Cain (Tex.Civ.App.) 63 S.W.(2d) 237." The rule as announced by the Beaumont Court was applied by the Commission of Appeals in Casualty Reciprocal Exchange v. Stephens, 45 S.W.(2d) 143, 148, where Judge Ryan, speaking for Section B of the Commission, said: "After the jury found that Stephens was totally and permanently incapacitated, they were not required to find the number of weeks or the percentage of partial incapacity caused by injury to specific parts of the body."

Confronted with this conflict, and in the absence of any definite ruling by the Supreme Court on the point, if deemed necessary to the disposition of the case, to choose between the conflicting views of the courts, we would follow the rule announced by the Beaumont Court as being the more reasonable. Of course, a defendant is entitled to have the jury consider and pass upon all defensive issues, but we think this was sufficiently accomplished in the instant case. The defensive issues were submitted, but were to be answered only on the conditions heretofore set out. The major contention of appellee, that is, that he had sustained a total permanent incapacity, having been found by the jury to be true, we think rendered it wholly unnecessary for the subsidiary issues to be answered. We do not think it correct to say that the defensive issues were not submitted or considered, simply because they were not to be answered if the jury, in answer to the major issue, found appellee's incapacity to be total and permanent. All issues were clearly set forth in the charge, were read to the jury in open court, were before them in their deliberations, and we think as reasonably sensible men the jurors must have known that they were called upon to distinguish, discriminate, and

determine from the evidence whether appellee's injuries were temporary in nature, or total and permanent, etc., and having answered the major and all-inclusive issues in the affirmative, it would have been useless and futile to have required the jury to answer the same question a second time. If the minor dependent issues had been submitted unconditionally, the jury must have answered the same either affirmatively or negatively; if affirmatively, the answer would simply have reiterated what they had just said; but if per chance negatively, the answer would have produced such a conflict as to require the ordering of a mistrial. We do not think it proper in any case for the court, by confusing submissions, to tempt the jury to render either futile or conflicting answers.

But aside from these considerations, we think the case was submitted precisely as pleaded. Appellee's main contention was that he had suffered a total permanent incapacity, and only in the alternative did he ask to be compensated for an incapacity of a less serious nature. The answer of appellant to these contentions, in effect, is simply a general denial; its special pleas related to other issues. In this status the court gave the charge objected to, submitting the alternative issues in the alternative precisely as framed by pleadings, which, in our opinion, complied with the provisions of the statute, requiring the court to "submit the cause upon special issues raised by the pleadings and the evidence in the case." Article 2189, R.S.

But we do not base our holding alone on the ideas just expressed, because, in our opinion, the unconditional submission of special issue No. 22 was a substantial answer to the request of appellant for an unconditional submission of its defensive issues. This issue and the answer thereto are as follows: "Do you find from a preponderance of the evidence that plaintiff, Hess D. McNorton sustained only partial incapacity on or about the 13th day of August, 1934?" To which the jury answered: "No." This answer, without reference to answers to other issues, found in effect that appellee had not sustained partial incapacity only, which is in harmony with their answers to special issues Nos. 4 and 5, to the effect that his incapacity was total and permanent. This being the status, as established by the findings, all mere subsidiary issues as to partial incapacity, the number of weeks of its persistence, and the percentage thereof, became immaterial.

In its brief, appellant combats this view in forceful language, as follows: "Under the evidence the jury could only answer that one way, that is in the negative. It has heretofore been noticed that the undisputed evidence showed that McNorton sustained serious injuries to his toes resulting in the necessity of their amputation and that he was in the hospital thirty-four days. If we may be pardoned the expression: Any fool would know that the man did not sustain only 'partial incapacity' on August 13th, 1934. There was no controversy about the issues submitted. Everybody conceded that the injury sustained by McNorton on August 13, 1934, totally incapacitated him. The controversy was whether such total incapacity was permanent or partial and the percentage and duration thereof, and whether the disability suffered by him at the time of the trial and which would be suffered in the future was confined to his toes or feet." We cannot accept this view of the matter. Evidently, as applied to the facts of the case, the charge was intended by the court, and understood by the jury, as requiring the ascertainment, from facts and circumstances in evidence, whether the injuries sustained by appellee on August 13, 1934, resulted only in a partial incapacity. Omitting the date of the injury appearing in the issue as submitted by the court, the charge otherwise is phrased substantially as the charge requested by appellant. With reference to the injury to appellee's right foot, appellant requested, among other issues, the following: "* * * 5. Do you find from a preponderance of the evidence that such incapacity, if any, will not be partial only. Answer 'yes' or 'no.'" With reference to the injury to appellee's left foot, appellant requested, among others, the following: "* * * 12. Do you find from a preponderance of the evidence that such incapacity, if any, will not be partial only? Answer 'yes' or 'no.'" And with reference to the combined injury to both feet, appellant requested among others the following: "* * * 19. Do you find from a preponderance of the evidence that such incapacity, if any, will not be partial only? Answer 'yes' or 'no.'" To all intents and purposes, we think appellant's defensive issues were submitted, were considered by the jury and were answered adversely to its contention.

■ In response to the special defense pleaded by appellant, to the effect that appellee's injury and incapacity resulted from and was confined to the loss of toes, etc., the court submitted unconditionally issues Nos. 23 and 24, as follows: "Special Issue No. 23: Do you find from a preponderance of the evidence that the plaintiff, Hess D. McNorton's disability, if any, is limited to the toes of his right foot? Answer 'yes' or 'no.'" To which the jury answered: "No." "Special Issue No. 24: Do you find from a preponderance of the evidence that the plaintiff, Hess D. McNorton's disability, if any, is limited to the toes of his left foot? Answer 'yes' or 'no.'" To which the jury answered: "No." In regard to these issues, appellant in its brief has this to say: "Special Issue No. 23 merely inquired of the jury if McNorton's disability was limited to the toes of his right foot. In view of the fact that it was undisputed that he lost some toes from his left foot, the jury, of course, had to answer the issue 'no.' No 24 merely inquired of the jury if plaintiff's disability was limited to the toes of his left foot. The undisputed testimony showing that plaintiff lost toes from his right foot, the jury naturally had to also answer that question 'no.' In other words, the court and plaintiff's counsel, playing fast and loose with defendant's rights, we sincerely think, submitted the defendant's defense in this case upon a proposition of 'heads the plaintiff wins, tails the defendant loses.' To express the effect of the submission more elegantly, perhaps, defendant's defensive theory was submitted upon a basis of 'answer No and the plaintiff wins; answer Yes and the defendant loses.'" And again it is said: "In fact, the defensive issues of the Insurance Association were not affirmatively or separately submitted to the jury in any manner, and even the issues submitted by the court which must have been purportedly designed to submit the defendant's defense herein, to-wit, Issues 22, 23 and 24, are nonsensical and not susceptible of any intelligent construction and are so framed as that same could only be answered in one way under the testimony."

While we question the propriety of submitting the issue as was done by the court, that is, by requiring the jury to answer separately whether appellee's incapacity, if any, was limited to the toes on his right foot, and similarly, in another issue, whether his incapacity, if any, was limited to the toes on his left foot, yet we cannot agree with counsel for appellant that the court, playing fast and loose with appellant's rights, submitted its defenses upon a proposition of "heads the plaintiff wins, tails the defendant loses," or on a basis of "answer no and the plaintiff wins, answer yes and the defendant loses," as charged by counsel; nor do we think the issues nonsensical and not susceptible of any intelligent construction, and so framed as to be answered only in one way. Considered in connection with the entire record, we do not think the jury was misled or coerced into answering the issues in a particular way; besides, we find that the issues as framed follow substantially the pattern as requested by appellant. •Appellant requested the submission of the following: "No. 1. Do you find from a preponderance of the evidence that plaintiff has sustained any incapacity to his right foot other than such as was the natural result of the absence of his amputated toes? Answer Yes or No." This was followed by a request for the submission of other issues relating to the partial incapacity, whether or not, of appellee's right foot, the percentage and duration thereof, etc.; this being followed by request for the submission of special issue No. 8, as follows: "Do you find from a preponderance of the evidence that plaintiff has sustained any incapacity to his left foot, other than such as was the natural result of the absence of his amputated toes? Answer Yes or No." And this in turn was followed by a request for the submission of subsidiary issues relating to the injury to the left foot. So, if the court erred in submitting special issues Nos. 23 and 24, as contended, we think the error was invited by appellant.

■ Whether or not appellee's incapacity extended beyond the mere loss of toes, for which the statute prescribes specific compensation (article 8306 § 12), was a question of fact for the jury. Section 11a of article 8306, Workmen's Compensation Law, as amended by Acts 1927, c. 28, § 1 (Vernon's Ann.Civ.St. art. 8306, § 11a), after providing that, in cases involving certain named injuries, the incapacity "shall conclusively be held to be total and permanent," further provides that: "The above enumeration is not to be taken as exclusive but in all other cases the burden of proof shall be on the claimant to prove that his injuries have resulted in permanent, total incapacity." We think it follows that, where the pleadings and proof justify the submission of the issue, the jury

may determine that a total, permanent incapacity resulted from an injury of whatever nature, and necessarily each case must be determined from its own peculiar facts.

The court submitted special issue No. 20, as follows: "What do you find from a preponderance of the evidence to be the average daily wage or salary, if any, earned by plaintiff per day during the days when so employed covering the year immediately preceding the 13th day of August, 1934? Answer in dollars and cents, if any." To which the jury answered: " $3.18."

Appellant insists that the undisputed evidence shows the exact number of days plaintiff worked during the year preceding his alleged injury, the exact amount of money he earned, to wit, the sum of $907.-30; that during such period he worked exclusively for Morton Salt Company at the same place and job as when injured; therefore, appellee was not entitled to have his compensation computed under either first subsection 1 or subsection 2 of section 1, article 8309, R.S., but that the proper legal method of computing the compensation was to divide his total earnings for the year, $907.30, by 52 weeks, the quotient to be multiplied by 60 per cent.

The evidence is undisputed that appellee worked for the Morton Salt Company in the same place and at the same job for the entire year preceding his injuries; that under the N.R.A. Code he received 40 cents per hour for eight hours' work, and that prior to the effective date of the N. R.A. Code he received 35 cents per hour for nine hours per day. We do not regard the testimony that appellee earned only $907.30 undisputed. It is true Mr. Haynes, manager of the salt mines, testifying from a copy of a record kept by clerks in his office, the original being in the Chicago office, said that appellee earned and was paid $907.30 during the year preceding the date of his injuries; however, that was not all the testimony on the issue. Appellee testified that, from August 13, 1933, to August 13, 1934, the date of his injuries, he worked every day except Christmas Day, at the above wage scale, and during the year preceding the injury the wage scale of the N.R.A. was in effect, if not the entire year, substantially for the entire year. In the judgment, appellee was awarded compensation at the rate of $11 per week.

We are of opinion that appellee is entitled to be compensated as provided by article 8309, § 1, first subsec. 1, and that the average weekly wage is arrived at by dividing the average annual wage by 52, as provided in subsection 5 of section 1, art. 8309, R.S. It appears however that, prior to the rendition of judgment, confessing liability, appellant paid appellee the sum of $443.20, being compensation at the rate of $11.08 per week. In view of this situation, we do not think appellant is in a position to object to the weekly compensation established by the judgment of the court. In a similar situation, presented in Texas Employers' Ins. Ass'n v. Beckworth (Tex.Civ.App.) 42 S.W.(2d) 827, 831, Judge Randolph, speaking for the Amarillo Court, said: "In the case at bar, the defendant pleaded the payment of the sum of $650 by it to the plaintiff, and it was shown by the evidence that such sum was based upon a weekly wage payment of $19.04. We therefore hold that the defendant had recognized the weekly wage to be as claimed by the plaintiff, and overrule this contention of the defendant."

Appellant insists that: "The testimony having raised the issue, defendant was entitled to have the jury find whether the plaintiff, subsequent to his injury, refused employment offered him in good faith by Morton Salt Company, which was reasonably suited to his capacity and physical condition, and whether such refusal was without justification."

Mr. Freidline, assistant manager of Morton Salt Company, but without authority to employ and discharge labor, testified that during March, 1935, he informed appellee that Mr. Haynes, general manager, was willing to put him back to work on the picking line when he was able to return to work, and at the same wage he was being paid when injured. Mr. Haynes, general manager, testified to a conversation that he had with appellee soon after his return from the hospital in Dallas, while he was still crippled and walking with crutches. The testimony of Mr. Haynes is as follows:

"Q. Did you make any statement to him about whether he could resume his employment to come back to work? A. Yes, I told him at that time, at any time, just as soon as he was well enough, I had a job for him whenever he wanted to come back.

"Q. Did you tell him what it was? A. No, I didn't.

"Q. You didn't tell him what it was to be? A. No sir, I didn't mention that fact.

"Q. Did he ever come back and ask you to be allowed to go to work? A. No."

The witness also testified that, about two nights prior to the time he was testifying, he had another conversation with appellee about coming back to work, and offered him employment, told him he could start to work the next day at the picking belt, at the same wage being paid when he was hurt; that this labor could be performed while sitting down, was not heavy, but easy manual labor; that appellee said he would think it over. On cross-examination, the witness testified that, when the proposition just mentioned was made, witness stated to appellee that, if he would settle the case and come back to work the next day, if he wanted to, "We would offer him $1500 and give him a job over there at the same rate of wages he was drawing when he was hurt." At the time this proposition was made, no one was present except himself and appellee. Witness testified that he knew appellant had offered appellee $1,500 in settlement, and that witness voluntarily visited appellee and made the proposition, desiring him to accept that and come back to work.

The above comprises all the testimony on the issue mentioned in the proposition heretofore set out. The question under consideration was a defensive matter, was pleaded as such by the appellant, and the burden was upon it to properly raise and round out the issue by evidence, else it was not the duty of the court to submit same. The statute (section 12a of article 8306) provides: "If the injured employee refuses employment reasonably suited to his incapacity and physical condition, procured for him in the locality where injured or at a place agreeable to him, he shall not be entitled to compensation during the period of such refusal, unless in opinion of the board such refusal is justifiable. This section shall not apply in cases of specific injuries for which a schedule is fixed by this law."

At the time Haynes had the first conversation with appellee in regard to reemployment, he was still crippled, walking on crutches; the offer was most general in terms; Haynes simply told appellee that he could return to work when he felt well enough; the character of the work offered not being mentioned. The last offer mentioned by Haynes was made just before or during the progress of the trial, and was really not an offer of reemployment, but

an effort to induce appellee to compromise his claim; the offer of re-employment by Morton Salt Company being conditioned upon acceptance by appellee of $1,500 from appellant in settlement of his cause of action.

To deprive an injured employee of compensation under this provision of the statute, it should be shown that the employment offered was reasonably suited to the incapacity and physical condition of the injured party, which we do not think was done in the instant case; nor does the record reveal evidence indicating the period of time appellee arbitrarily refused to accept employment, even if he did so; hence no data was furnished by which to ascertain the amount of compensation to which appellee was not entitled by reason of the alleged arbitrary refusal to accept employment suited to his physical condition. We therefore overrule appellant's contention in this respect.

Appellant introduced the testimony of Haynes, general manager of Morton Salt Company, to the effect that he offered appellee employment in the "picking belt" (a sitting-down job) at the same wage being paid at the time of his injury. On cross-examination the witness testified, over the objection of appellant, that his offer of employment was: "I just simply said to him if he would settle the case and come back to work the next day, if he wanted to, we would offer him $1500 and give him a job over there at the same rate of wages he was drawing when he was hurt." Witness testified further that he knew appellant had offered appellee $1,500 in settlement, and that witness was endeavoring to induce appellee to accept the offer and come back to work. Appellant moved to strike the evidence developed on cross-examination, and in this connection its attorney testified that, at the time he introduced the testimony of Haynes in regard to the last offer of employment, the attorney did not know that Haynes' offer was conditioned on appellee accepting $1,-500 in settlement of his claim. The motion was overruled, and error is assigned on the action of the court in admitting the testimony of Haynes on cross-examination, and in overruling the motion to strike.

Appellant's liability to pay appellee some amount was not disputed, in fact was expressly admitted in appellant's answer, and also was impliedly admitted by it in paying appellee forty weeks' compensation at $11.-

08 per week. So, it is obvious that the evidence of willingness on appellant's part to compromise the claim could not have been prejudicial on the issue of liability. The general rule is that, where one party introduces part of a conversation or statement, the other party may introduce the balance, so far as the same is relevant, although under the strict rule, such evidence otherwise would not be admissible. See 22 C.J. p. 195, § 163; Texas cases cited in note 3, p. 195. We overrule appellant's contention in regard to this matter.

 In a single proposition, appellant contends that the court erred in overruling its motion for a new trial, based upon a number of separate bills of exception, taken to certain alleged prejudicial passages in the arguments of counsel for appellee. Appended to each bill is a statement by the trial judge, to the effect that the approval of the bill was not to be considered as a finding of fact, nor the approval, as evidence, of any reasons stated in the bill, except the fact that the argument was made and exception thereto taken. These bills, in our opinion, fall under the condemnation pronounced in Texas Employers' Ins. Ass'n v. Heuer (Tex.Civ.App.) 10 S.W.(2d) 756, 759; the court said: "This bill is defective in that the trial court does not certify expressly and affirmatively that there was no evidence to justify the argument, nor that there was no evidence upon which the argument could have been founded, nor that there was no argument on the part of opposing counsel to provoke the argument complained of. Because of these defects, the bill does not constitute reversible error. Travelers' Ins. Co. v. Peters (Tex. Civ.App.) 3 S.W.(2d) 568; Kansas City, M. & O. Railway Co. v. West (Tex.Civ. App.) 149 S.W. 206; Pecos & N. T. Railway Co. v. Suitor (Tex.Civ.App.) 153 S.W. [185] 191."

We think the correct rule in such situations was announced by the court in United States Fidelity, etc., Co. v. Weir (Tex.Civ.App.) 286 S.W. 565, 568, as follows: "But improper argument, or the refusal of the court to grant a new trial on account of improper argument, as said by our Supreme Court in I. & G. N. Ry. Co. v. Irvine, 64 Tex. [529] 535—'within itself, furnishes no sufficient reason for reversing a judgment; and it is only in cases in which the preponderance of the evidence seems to be against the verdict, or in cases in which the verdict seems excessive and there is reason to believe that the verdict may have been affected by such course of conduct, that it becomes ground for a reversal'" (with full citation of authorities).

 In the main, the language of counsel, brought forward in the bills, was based upon evidence and legitimate deductions from the evidence, revealing simply an earnest appeal for a verdict in favor of appellee, which, in our opinion, was not improper. The reference, in the argument, to plaintiff's wife and "redheaded kids" was justified by evidence, even to the color of hair; and the burst of patriotic fervor by counsel, stating his devotion to the Flag, while off the record, was, in our opinion, a harmless adornment of speech, and the statement that a "red-blooded American reared under the Stars and Stripes, though uneducated, was just as good as an educated man," was, in our opinion, harmless. The proof showed that appellee was uneducated and not qualified for any service other than manual labor. In this connection, the remark of counsel that appellee was as good as an educated man, while wholly unnecessary, stated a self-evident truth (see Declaration of Independence). We overrule the assignments and propositions urged, in regard to the argument of counsel.

After carefully considering all assignments and finding no reversible error, the judgment below is affirmed.

Affirmed.