**LIBERTY MUT. INS. CO. v. McDANIEL.**

No. 12363.

Court of Civil Appeals of Texas. Dallas.

Feb. 13, 1937.

Rehearing Denied March 13, 1937.

494

Robertson, Leachman, Payne, Gardere & Lancaster, of Dallas, for appellant.

Lawther & Cramer, of Dallas, for appellee.

BOND, Justice.

This is a suit by the appellee, Captola McDaniel, against the appellant, Liberty Mutual Insurance Company, to recover compensation under the Workmen's Compensation Law (Vernon's Ann.Civ.St. art. 8306 et seq.), for injuries alleged to have been sustained by her in the course of her employment with Titche-Goettinger Company, in Dallas, which injuries, it was alleged, rendered her totally and permanently incapacitated from performing work or labor. All preliminary steps required by statute were alleged to have been taken for an appeal from the final award of the Industrial Accident Board to the district court.

The insurance carrier, appellant herein, by pleadings and evidence, raised the issue of partial incapacity as a defense to appellee's claim of total, permanent incapacity.

The case was submitted to a jury, and on findings, to the effect, that Captola McDaniel sustained accidental personal injury on November 23, 1934, in the course of her employment with Titche-Goettinger Company, which naturally resulted in her total and permanent incapacity from performing work or labor, that she did not sustain, as a result of such injuries, a partial disability, and that failure to pay compensation in a lump sum would work a manifest hardship and injustice, the court rendered judgment in favor of the plaintiff for the sum of $2,505, from which the insurance carrier appealed.

Appellant insists that the court erred in submitting to the jury the question of total and permanent incapacity and special issue on the question of partial incapacity, conditioned on findings as to total and permanent incapacity. Following Issues Nos. 1 and 2, to which the jury answered that appellee was injured in the course of her employment, the court submitted special issues 3 and 4, as follows:

Special Issue No. 3: "Do you find from a preponderance of the evidence that such injury, if any, sustained by Captola McDaniel on November 23rd, 1934, naturally resulted in total incapacity of the said Captola McDaniel?" To which the jury answered: "Yes."

Special Issue No. 4: "Do you find from a preponderance of the evidence that such total incapacity, if any you have found in answer to Special Issue No. Three was and is permanent?" To which the jury answered: "Yes."

Then issue No. 5 was submitted, as follows: "If you have answered Special Issues Nos. Three and Four both with Yes, then you will answer the following Special Issue: but, if you have answered either Special Issue Three or Four with No, then you will not answer this issue:

"Special issue No. 5: Do you find from a preponderance of the evidence that the plaintiff, Captola McDaniel, did not sustain, as a result of the injury, if any, of November 23rd, 1934, a partial incapacity?" To which the jury answered: "Yes."

Following these issues, questions Nos. 7, 8, 9, and 10 were submitted on partial incapacity, partial permanent incapacity, number of weeks such partial incapacity will exist, and percentage of such partial incapacity. The answers of the jury to these last questions were conditioned only on a negative answer to issue No. 4, and the answer to issue No. 4 being in the affirmative, that the total incapacity was permanent, under the instructions of the court, questions Nos. 7, 8, 9, and 10 were not answered.

■ There is a long line of decisions in this state that a conditional submission of the issue of partial incapacity deprives the defendant of an affirmative submission of such defense and constitutes reversible error. These decisions are collated in Traders' & General Ins. Co. v. Forrest (Tex.Civ.App.) 78 S.W.(2d) 987, 988, so we pretermit listing them here. In the case of Texas Employers Ins. Ass'n v. McNorton, 92 S.W.(2d) 562, this court observed the irreconcilable conflict existing in the decisions of this state, and, being confronted with such conflict, and in the absence of any definite expression from our Supreme Court, we expressed our own views on the question, and held, in compensation cases, the submission of issues on partial incapacity conditionally so as to make answers thereto contingent on answer to issues on total or permanent incapacity was not reversible error, affirming the judgment of the lower court on the point raised.

We are obsessed with the view that the finding of the jury on total permanent incapacity excludes the idea of partial incapacity, and, since the finding of permanent total incapacity negatives the issue of temporary or partial incapacity, the conditional submission of the latter issue was sufficient. A writ of error was granted in the McNorton Case, and is now pending in the Supreme Court. So, in deference to the action of the Supreme Court in granting the writ of error, we would be inclined to hold in this case in line with other adjudicated cases, that appellant was deprived of an affirmative submission of the defense of partial incapacity and reverse this cause; but, in the case of Traders & General Ins. Co. v. Wright, 95 S.W.(2d) 753, subsequently decided by the Eastland Court of Civil Appeals, in which an opposite view was expressed to that in the McNorton Case, a writ of error was also granted in that case and now pending before the Supreme Court, the question is now no closer to solution, and still remains uncertain. In view of this situation, we adhere to the holding in the McNorton Case, overruling appellant's assignment.

■ However, as this case must be reversed on other assignments hereinafter mentioned, on account of such conflict and the uncertainty of a final decision, if the Supreme Court has not finally determined the question at the time of another trial, the issue of partial incapacity and the ancillary issues thereto should be submitted in a manner as to give the defendant an unconditional submission to avoid the possibility of a second reversal.

Appellant further assigns error on the action of the trial court in permitting, over its objection, the introduction in evidence and reading before the jury of an affidavit which appellee filed before the Industrial Accident Board of date April 11, 1934. The affidavit complained of is as follows:

"Before me, the undersigned authority, on this day personally appeared Miss Capitola McDaniel, known to me to be the person whose name is subscribed hereto, and who, after being by me duly sworn, on oath states as follows:

"That on the 23rd day of Nov. A. D. 1934, she was employed by Titche Goettinger Company and had been employed by Titche Goettinger Company since the 12th day of March, A. D. 1934, and worked in the same place and in the same department prior to that time for Mrs. Allen, who operated the cafeteria in Titche Goettinger Company store. That she had worked for Mrs. Allen for a period of two years prior to the time Titche Goettinger took over the cafeteria department. That her duties in the cafeteria department were in connection with the drink counter, working behind the counter.

"That as a part of her duties she worked around a large coffee urn; that at about

2:30 in the afternoon, while she was working near the coffee urn it boiled over and threw about two gallons of boiling and steaming water over the top of the coffee urn, striking her back, and scalding practically the entire surface of her back.

"That the other employees came to her immediately afterward, and picked her up from the floor and tore her clothes from her and in other ways endeavored to dry the boiling water from her body. That she was taken to the nurse's office on the sixth floor of Titche Goettinger Company where she stayed for a period of approximately one hour when she was taken to the Baylor Hospital. That she was in Baylor Hospital for a period of approximately nineteen days, when she was removed to her home.

"That since said accident she has been unable to work, although she has, at times, endeavored to go back to work and do all of the work possible, thinking that to get back to work might help her condition and help her to recover.

"That at this time she has fainting spells which come on her without warning; that on two different occasions while she was at work at Titche Goettinger's store after her return to work she has become unconscious and remained that way for several minutes; that she has cold sensations during these attacks, and has had fainting spells on other occasions on the streets.

"That she does not know the cause of these fainting spells, but she does know she did not have any such fainting spells before said accident.

"That she has a numbness in the entire right side, more noticeable in the right leg and arm, that she has dizzy spells and is highly nervous.

"That before said accident she was in good health, worked and slept well and had never had an accident of any kind. That she has never had any serious accident or illness prior to said accident of any kind, with the exception of the removal of her tonsils about thirteen years ago and the removal of her appendix about ten years prior to this accident.

"That she has never had any pains, headaches, dizzy spells or illness of any kind prior to the date of said accident.

"That she is being treated by Dr. John R. Beall, at the present time, in his office in the Wilson Building in the City of Dallas, Texas.

"That the Liberty Mutual Insurance Company, the insurance company for Titche Goettinger Company have stopped the payment of compensation to her, that the compensation has not been paid to her since the 15th day of March, A. D. 1935.

"That she has incurred doctors' bills in the treatment of her condition for which she owes, and that she has no bank account and has expended all her savings for same; that she is unable to work at this time and that she has no property of any kind.

"That her compensation rate is not sufficient to properly maintain her, but if her compensation is paid weekly, that at the end of the compensation period she will have expended all of said compensation.

"That if her compensation were paid to her in one lump sum instead of weekly, that she could invest the same in property so as to receive from such property sufficient to carry her and at the end of the compensation period she would still have a large portion of her original sum.

"That she asks the Industrial Accident Board to award her compensation in one lump sum instead of weekly.

"That she is of the opinion that her condition is that of total and permanent disability under the Compensation Act.

"[Signed], Captola McDaniel."

The record reveals that the jurisdiction of the trial court was not challenged by appellant, properly pleaded, and all preliminary steps required by statute were taken before the Industrial Accident Board; and, in limine, certified copies of the proceedings before the board were offered in evidence before the trial judge. In addition thereto, the plaintiff introduced to the court and jury her claim for compensation filed before the Industrial Accident Board, which showed her compensation rate was at least $7.50 per week, thus, multiplied by the period of compensation fixed by law, would result in a sum within the jurisdiction of the court. This was sufficient, we think, in the absence of a contest over the jurisdiction in the trial court.

The record shows that the above affidavit was read to the jury immediately following the testimony of appellee, in which she gave in detail pretty much the same account of her injury as revealed in the affidavit. Furthermore, appellee introduced and read to the jury immediately before the introduction of the affidavit a report of the initial payment of $7.50 per

week compensation, which was filed before the Industrial Accident Board by the insurance carrier. Thus it will be seen that, by reading of the affidavit in the presence and hearing of the jury immediately on the reading of the initial payments made by the insurance company and appellee's testimony given on the trial of this case, the jury could not escape the effect the affidavit had on the issues raised in the pleading and evidence; thus, in a measure, the court deprived appellant of a trial de novo, which, by statute, plaintiff was entitled to have in a case of this nature. We think the introduction of the affidavit and the reading of it before the jury was error, necessitating a reversal of this cause.

Indeed, the court permitted its introduction on the question of jurisdiction, but we fail to see how the affidavit could aid the court and jury on such issue. The jury heard the reading of the ex parte affidavit, and it would take a vivid imagination to say that the jury would consider it alone for that purpose, and was not damaging to the rights of appellant in a trial de novo of the issues involved.

Appellant further assigns error on argument of the attorney for appellee in his closing speech to the jury, in which he said: "They talk about bringing in seven or eight doctors. There is one doctor that they did not bring in. That is Dr. Williamson, the interne at Baylor Hospital. I wonder why he was not here to testify, since they had all of the others." The record shows that Dr. Williamson was an interne at Baylor Hospital at the time appellant was admitted to the hospital for the treatment of her injuries of which she complains, and the only testimony bringing his name into the case was that of appellee, who testified:

"Q. Now, was there an interne at the hospital who came in to see you during the day, during the time the doctor didn't come? A. Yes, sir, Dr. Williamson.

"Mr. Gardere: Q. Doctor who? A. Dr. Williamson.

"Mr. Gardere: Q. Do you know where Dr. Williamson is now? A. No, sir, I don't."

The testimony bearing on appellee's alleged condition, as a direct result of burns received while employed by Titche-Goettinger Company, was in sharp conflict and furnished principally, if not entirely, by expert medical testimony. Appellee claims she suffers the loss of feeling on the entire right side of her body, due to a severe burn caused by the contents of a large coffee urn boiling over and onto her back, while she was employed by Titche-Goettinger Company. Appellee's medical testimony, theoretically, accounts for her condition to an occlusion or stoppage of an artery in the brain caused by a little globular fat or a tiny clot of blood from the burned area, carried to the brain through the arteries, caused paralysis of the sensorial nerves; while the medical testimony of appellant was that such occlusion or stoppage was not reasonably probable to go through the capillary system of the human body, the lungs and heart, as to cause the loss of the sense of feeling.

Thus it will be seen that the argument conveys to the jury the idea that Dr. Williamson would likely give testimony favorable to appellee's theory of her alleged condition if he were present, and that appellant did not produce him, knowing his testimony would be unfavorable to its contention. Appellee was not entitled to the imaginary testimony of Dr. Williamson to corroborate her witnesses on the issue as to whether she had lost the sense of feeling, beginning at the time she was admitted at the hospital and grew progressively worse; such argument, we think, was not properly deducible from the facts, and was error as bearing directly on the related sharply conflicting testimony on the important issue as to whether appellee's present condition was the direct result of the injuries she had previously sustained.

There are other grounds assigned, which appellant urges for a reversal of the case, but, we think, they are without merit; and, as this cause must be remanded for another trial because of the errors above designated, and the matters complained of will likely not occur on another trial, we deem it not necessary to discuss them; they are expressly overruled. The judgment of the lower court is reversed and cause remanded.

Reversed and remanded.