TRAVELERS INS. CO. v. NOBLE.

No. 12428.

Court of Civil Appeals of Texas. Dallas.

May 1, 1937.

Rehearing Denied May 29, 1937.

Thompson, Knight, Baker & Harris and Pinkney Grissom, all of Dallas, for plaintiff in error.

White & Yarborough, of Dallas, for defendant in error.

BOND, Justice.

Appellee, L. H. Noble, brought this suit in a district court of Dallas county, Tex., in the nature of an appeal from an award of the Industrial Accident Board to recover upon a policy of workmen's compensation insurance against the Travelers Insurance Company, the insurance carrier of Ford Motor Company.

Plaintiff alleged that, on June 8, 1935, in Dallas county, Tex., he was an employee of Ford Motor Company, a subscriber to the Workmen's Compensation Law of the state of Texas (Vernon's Ann.Civ.St. art. 8306 et seq.), and that while in the course of his employment he sustained accidental personal injuries, which totally and permanently incapacitated him to work, for which he is entitled to compensation within the purview of the law, setting out in detail all the injuries he sustained to his head and body, muscles, nerves, and blood vessels; kidneys, bladder, urinary organs, intestines, and to his back; that he sustained a fracture across the fourth lumbar vertebra, for all of which he prayed for 401 weeks' compensation, payable in a lump sum.

The defendant, the Travelers Insurance Company, answered by general demurrer and general denial, and alleged, by way of cross-action, that it was not satisfied with the award of the Industrial Accident Board, and also asked that the award be set aside.

The pleadings of the parties thus presented raised the issues of total and partial disability, the duration and extent of each, the amount allowable, and the manner of payment.

The cause was tried to a jury and, in response to special issues, the jury found all necessary elements for plaintiff to recover against the defendant under the Workmen's Compensation Law of Texas, for 54⅚ weeks of total incapacity and 75 per cent. partial incapacity after the termination of such total incapacity, for 300 weeks, barring an irreconcilable conflict in findings on the issue of partial incapacity as shall presently be mentioned.

On the verdict of the jury, judgment was entered in favor of the plaintiff and his attorneys, White & Yarborough, and against the defendant, for the sum of $15 per week for the 54⅚ weeks total incapacity, payable weekly until the sum of $821.71 is paid, and for the sum of $11.50 for 300 weeks partial incapacity, payable weekly until the sum of $4,175.71 is paid; the principal sums to bear 6 per cent. interest.

In submitting the charge to the jury, the trial court followed the pleadings and evidence, but included within the charge duplicate questions bearing on partial incapacity which, we think, were calculated to and evidently did confuse the jury, which presents an irreconcilable conflict in the jury's findings on vital issues as to cause a reversal: Special issue No. 9 of the court's charge and the jury's answer thereto is, as follows: "Do you find from a preponderance of the evidence that L. H. Noble sustained partial incapacity at the end of such total incapacity, if any you have found in answer to Special Issue Number 5? An-

swer 'Yes' or 'No.'" The jury answered: "Yes." To special issue No. 5, the jury had found that the accident in question naturally resulted in total incapacity of the plaintiff. Thus, the answer of the jury to this question is, in effect, that partial incapacity began after the termination of the total incapacity. Then, the court submitted special issue No. 13, which issue and the jury's answer thereto is, as follows: "Do you find from a preponderance of the evidence that L. H. Noble sustained partial incapacity to labor as a result of his injuries, if any you have found in answer to Special Issue Number 4? Answer 'Yes' or 'No.'" The jury answered "No." To special issue No. 4, the jury had found that the accident in question resulted in personal injury to plaintiff. Thus, the answer of the jury to this question is, in effect, that no partial incapacity resulted to plaintiff from the injury sustained on account of the accident. Considering both of the questions and answers together, we have the jury finding, in response to issue No. 9, that plaintiff did sustain partial incapacity after the end of the total incapacity, and a finding, in response to issue No. 13, that plaintiff did not sustain partial incapacity since the accident. If plaintiff did not sustain partial incapacity resulting from the accident, as found by the jury in response to issue No. 13, he certainly could not have sustained partial incapacity at the end of total incapacity, as found by the jury in response to issue No. 9. Obviously, the findings are in conflict and will not support the judgment for partial incapacity. The judgment of the court for the amount of partial incapacity for 300 weeks at $11.50 per week is based upon the jury's answer to special issue No. 9 and the jury having answered special issue No. 13, that there is no partial incapacity resulting from the injuries, thus the conflict is such that a court is unable to determine the will of the jury.

■ Furthermore, special issue No. 15 and special issue No. 16 of the court's charge and the jury's answers thereto present further conflict: Special issue No. 15 and the jury's answer thereto is, as follows: "From a preponderance of the evidence, how many weeks, if any, of partial incapacity, if any you have found in answer to Special Issue Number 13, do you find L. H. Noble will sustain in the future by reason of the injuries, if any you have found in answer to Special Issue Number 4? Answer by giving the number of weeks." The jury answered, "Permanent weeks." Thus, it will be seen that the jury, having said that plaintiff sustained no partial incapacity from the injury he sustained and having found that such partial incapacity to labor was "permanent"; and, further, in response to special issue No. 16, that the percentage of such partial incapacity was 75 per cent., such findings cannot be reconciled. If plaintiff sustained no partial incapacity, obviously, such finding excludes the idea that such could be permanent or bear a percentage of incapacity.

Special issue No. 13 manifestly confused the jury in reference to special issue No. 5, to which, in effect, the jury found that plaintiff did sustain total incapacity. Had the jury answered special issue No. 13 that plaintiff did sustain partial incapacity as result from injuries of the accident in question, and then, in response to special issue No. 15, that such partial incapacity is permanent, and, to special issue No. 16, such incapacity is 75 per cent., obviously, such findings would run counter to and in conflict with the findings of the jury in response to issue No. 5. If plaintiff's injuries were total, they could not be partial, and vice versa. Thus, an affirmative answer to issue No. 13 would have presented an irreconcilable conflict with the affirmative answer to issue No. 5.

■ We think, conflicts in jury findings such as here presented most naturally follow from the manner trial courts are required, by the pronouncements of our courts in adjudicated cases in this state, condemning charges which submit defensive issues to be answered only on contingency. There is a long line of decisions in this state, that conditional submission of issues involving partial incapacity deprives the defendant of an affirmative submission of such defense and constitutes reversible error. These decisions are collated in Traders' & General Ins. Co. v. Forrest (Tex.Civ.App.) 78 S.W.(2d) 987. In the case of Texas Employers Ins. Ass'n v. McNorton, 92 S.W.(2d) 562, this court expressed the view that in compensation cases, the submission of issues on partial incapacity to be answered on contingent negative answers to issues on total or permanent incapacity, was not reversible error. See, also, our view expressed to the same effect in Liberty Mutual Ins. Co. v. Captola McDaniel, 102 S.W.(2d) 493, decided February 15, 1937. So, in the instant case, had the trial court charged the jury to answer special issues Nos. 13, 15, and 16 on condition of negative answers to issue No. 5, we

think such charge would have adequately presented to the jury the defensive issue on partial incapacity and, at the same time, avoided the evident conflict in the verdict of the jury. The findings of the jury, in answer to issue No. 5 on total incapacity, excludes the idea of partial incapacity for the period inquired about; and the finding of the jury in answer to issue No. 9 on partial incapacity includes the factual issue sought in question No. 13. Therefore, in submitting the duplicate questions on partial incapacity, the charge was calculated to confuse rather than to elicit a finding on the issue sought.

Appellant further assigns error on the action of the trial court in refusing to allow defendant to introduce proffered testimony of Dr. J. M. Martin to the effect that an X-ray picture put in evidence by the plaintiff showed no fracture or other traumatic injuries to plaintiff's lumbar vertebra, the sacrum or the ilium. Dr. Martin was shown to be qualified by experience and otherwise, to give such testimony, and his testimony was in direct contradiction to that of the testimony of plaintiff's witnesses—Dr. Shortal and Dr. Hurt—and was material on a controverted issue. The defendant's pleadings and evidence strongly raised the issue that plaintiff was not permanently injured and that there was no fracture of the vertebra.

The record shows that the trial of this cause consumed the greater part of three days for the introduction of testimony and that the X-ray picture in question was introduced, and that Dr. Shortal and Dr. Hurt had each testified in reference thereto, depicting a fracture of plaintiff's lumbar vertebra. On the second day of the trial, after the defendant had completed its testimony, the defendant's attorney asked permission of the court to have possession of the X-ray picture for the purpose of having it examined during recess of the court, by some physician of his choice. The court granted the attorney's request on condition that the examination be conducted in the presence of a deputy sheriff, and that such officer accompany the X-ray picture at all times when taken out of the courtroom by said attorney. When the defendant closed its testimony, the suggestion was then made by the attorney, to which no objection was offered, that testimony of some physician, who defendant would be able to secure to examine the picture, would be later offered

in evidence. Thereupon, the trial proceeded, and the plaintiff offered rebuttal testimony bearing on the issues raised by testimony of the defendant, none of which, however, as to the X-ray picture in question. In the meantime, defendant's attorney, in the presence of the deputy sheriff, caused the X-ray picture to be examined in due time, and before plaintiff had concluded his rebuttal evidence, Dr. Martin was present in court, sworn to testify, and his testimony tendered in evidence. The proffer was not impeaching evidence and was not cumulative of any testimony theretofore offered in evidence. The trial court sustained plaintiff's objection to the introduction of such testimony, on the sole ground that the testimony came too late and was not in rebuttal to anything brought out by him, thus refused to allow Dr. Martin to testify.

The introduction of testimony, which is not in rebuttal to anything brought out in the testimony of the other side, is addressed to the discretion of the trial court, reviewable only on the abuse of such discretion, and, where such testimony is attended with inexcusable delay or injects new and independent fact issues in the case as may effect an unreasonable delay of trial, courts ordinarily would be justified in refusing to allow such testimony to be introduced out of its order. But, in this instance, under the circumstances shown in the record, we think the defendant should have been allowed to introduce the testimony of Dr. Martin. Courts recognize the inconvenience and ofttimes seemingly impracticability to get physicians to leave their patients, sick and distressed, to attend court. Dr. Martin could not be secured to examine the X-ray picture because of his professional engagements, or to attend court at the moment he was called upon, but the record shows that he was in court before the testimony in the case had been concluded. Dr. Martin's testimony would have caused no delay in trial or injected anything new in the case. His testimony being material to factual issues involved, we think, the action of the trial court in the premises was reversible error.

All other assignments having been carefully considered, they are overruled; and, from what we have said above, the judgment of the court below should be reversed and the cause remanded; accordingly, it is so ordered.

Reversed and remanded.