WALTON et al. v. WALTON.   (No. 7254.)

(Court of Civil Appeals of Texas.   Galveston.
Dec. 15, 1916.)

1. MARRIAGE &⇒13—COMMON-LAW MARRIAGE
—VALIDITY.
The validity of a common-law marriage is
not an open question in Texas.

[Ed. Note.—For other cases, see Marriage,
Cent. Dig. § 4; Dec. Dig. &⇒13.]

2. MARRIAGE &⇒11 — COMMON-LAW MAR-
RIAGE—VALIDITY.
If deceased and one party entered into a
valid common-law marriage, he was never the
husband of another woman, though they went
through the valid legal form of statutory mar-
riage.

[Ed. Note.—For other cases, see Marriage,
Cent. Dig. § 30; Dec. Dig. &⇒11.]

3. WITNESSES &⇒132 —.TRANSACTIONS WITH
DECEDENT — "ACTION BY OR AGAINST EX-
ECUTOR"—PROCEEDINGS FOR APPOINTMENT.
In a contested proceeding for appointment
of an administrator, an alleged common-law
wife of deceased could testify what the deceased
said in publishing their marriage; the proceed-
ing not being one by or against an executor or
administrator wherein he could personally be
made liable under Rev. St. 1911, art. 3690, pro-
hibiting parties from testifying to transactions
with or statements by the intestate in such
actions.

[Ed. Note.—For other cases, see Witnesses,
Dec. Dig. &⇒132.
For other definitions, see Words and Phrases,
First and Second Series, Action.]

4. APPEAL AND ERROR &⇒662(3)—SCOPE OF
REVIEW—PRESERVATION OF EXCEPTIONS.
The mere fact that the court qualified a
bill of exceptions to exclusion of testimony
by stating that it did not appear what the wit-
ness would have testified does not prevent con-
sideration of the ruling on appeal; the require-
ment that it be shown what the witness would
have testified extending only to the bill of ex-
ceptions, and not to the showing made at the
time the exceptions were taken.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 2852; Dec. Dig. &⇒662(3).]

5. MARRIAGE &⇒52 — COMMON-LAW MARRI-
AGE—EVIDENCE—INSTRUCTIONS.
Where, in a proceeding for appointment of
an administrator, evidence of a common-law
marriage showed the fact of marriage, but that
the deceased lived apart from his wife for a
long period, an instruction should have been
given that to constitute a valid common-law.
marriage it is not necessary that the parties
live together for any specified time.

[Ed. Note.—For other cases, see Marriage,
Cent. Dig. § 91; Dec. Dig. &⇒52.]

Appeal from District Court, Galveston
County; Clay S. Briggs, Judge.

Application by Marie Estelle Walton to be
appointed administratrix of the estate of
Norton A. Walton, deceased, contested by
Nora Walton and another.   Judgment for
applicant, and contestants appeal.   Reversed
and remanded.

Terry, Cavin & Mills, A. H. Culwell, and
Jno. G. Gregg, all of Galveston, for appel-
lants.   Marsene Johnson, Elmo Johnson, Roy
Johnson, and Marsene Johnson, Jr., all of
Galveston, for appellee.

McMEANS, J.   Marie Estelle Walton,
claiming to have been the wife of Norton A.
Walton, deceased, filed in the county court of
Galveston county her application to be ap-
pointed administratrix of the estate of the
deceased.   Nora Walton, also claiming to
have been the wife of said Norton A. Walton,
contested said application, alleging that she
was the wife of the deceased, and prayed that
she be appointed administratrix.   In this con-
test she was joined by the Gulf, Colorado
& Santa Fé Railway Company.   A trial in
the county court, sitting in probate, result-
ed in a judgment or decree appointing Marie
Estelle Walton as administratrix.   From this
judgment the contestants appealed to the
district court of Galveston county, where,
upon a trial de novo before a jury, a judg-
ment was entered upon the verdict of a jury
in favor of the applicant, from which judg-
ment the contestants have appealed to this
court.

On the trial in the district court Nora Wal-
ton sought to prove the marriage as at com-
mon law with the deceased, Norton A. Wal-
ton, at a time antedating his statutory mar-
riage with the applicant, Marie Estelle Wal-
ton, and thus to establish her right as wife
to be appointed administratrix.   While she
was upon the stand as a witness in her own
behalf she was asked by her counsel the
following questions:

"Please state whether or not you were intro-
duced in society by Mr. Walton [the deceased],
and, if so, how you were so introduced?"

"Please say whether or not he [the deceased]
held you out to the public at all times as his
wife?"

"Please state whether or not an agreement had
been entered into between you and Mr. Walton
to live together as husband and wife, and, if
so, what was the agreement?"

"Say whether or not you had an agreement
with Mr. Walton to live with him as his wife
and he live with you as your husband, and, if
so, was the agreement kept, and did you so
live?"

Other questions of similar nature were
asked the witness, but the foregoing will
suffice to show their nature and importance
as bearing upon the main question in issue.

To each of the questions propounded coun-
sel for the applicant, Marie Estelle Walton,
objected upon the ground that the matter
thus sought to be elicited involved a transac-
tion with a deceased person, and that, it be-
ing an administration proceeding, the con-
testant could not testify thereto under our
statutes.   Article 3690, Revised Statutes of
1911.   The objection was sustained by the
court, and the witness was not permitted to
answer.   It is shown in the bills of exception
taken to this action of the court that, had
the witness been permitted to answer the
questions, she would have testified to the
effect that the deceased, Walton, had intro-
duced her in society as his wife, and that he
had held her out to the public at all times
since the agreement to live together as hus-

band and wife was made as his wife, that at the time and just prior to the time she began living with the deceased they entered into an agreement to live together as husband and wife and to consider between themselves that said relation existed, and that, in pursuance of said agreement so entered into, they did live together as husband and wife until the deceased left Ft. Madison in company with the applicant, Marie Estelle Walton.

[1, 2] The materiality of this testimony and its importance to contestants upon the issues involved are apparent. The validity of a common-law marriage is not an open question in this state. If, then, it be true that Nora Walton and the deceased were husband and wife by a common-law marriage, then the applicant, Marie Estelle Walton, was never the wife of the deceased, even though they subsequently went through the form of a statutory marriage. If she had never been legally married to him, then she had no right as a wife to administer upon his estate, but Nora Walton, if a common-law wife, had a preferred right.

[3] Article 3690, Revised Statutes of 1911 (old articles 2302 and 2248), provides:

"In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement, by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

Clearly, we think, the proceeding for the appointment of an administrator is not an action by or against executors, administrators, or guardians in which judgment may be rendered against them as such, nor is it an action by or against the heirs or legal representatives of a decedent. It is a contest between certain parties for the right to administer upon an estate, and whatever judgment might be rendered in the proceeding would not be for or against either party as executor, administrator, guardian, heir, or legal representative, although such trust relation might be created by the decree rendered. In so far as the witness Nora Walton is concerned, any right which she had to administer upon the estate grows out of her relation to the deceased as "surviving wife," and not as an heir. The question under discussion was before the Dallas Court of Civil Appeals in Ingersol v. McWillie, 9 Tex. Civ. App. 543, 30 S. W. 56 (writ of error refused), and there decided adversely to the contention of the appellee here, the applicant in the court below; and what we have said above is largely taken from that decision. We quote further from the case referred to:

"It has been held by our Supreme Court that the terms of the statute will not be extended so as to embrace those not specially mentioned therein. In the case of Newton v. Newton, 77 Tex. 508, 14 S. W. 157, it was held by Judge Gaines that the provisions of article 2248 could not be extended * * * to embrace legatees or devisees. The court says: 'This court has held that the exceptions could not be extended by implication to a class of persons not named, although the reason for embracing them was equally as strong as those which existed for including the persons expressly designated. Roberts v. Yarboro, 41 Tex. 451; Markham v. Carothers, 47 Tex. 25.'"

Wootters v. Hale, 83 Tex. 563, 19 S. W. 134, is a case where a son after his father's death was sued for land given him by his father by parol contract followed by possession and valuable improvements; and it was held that defendant was a competent witness to prove the transaction, as he did not claim the land as heir or legal representative.

Our conclusions are not in conflict with the decisions of our Supreme Court in Edelstein v. Brown, 100 Tex. 403, 100 S. W. 129, 123 Am. St. Rep. 816, and Berger v. Kirby, 105 Tex. 611, 153 S. W. 1130, 51 L. R. A. (N. S.) 182, as we understand them. In the case first referred to the suit was brought by the children and heirs of Mrs. Edelstein, whom they claimed to have been the wife of the defendant, Edelstein, at the time of her death. The object was to recover her interest in the community property. The gist of the controversy was the common-law marriage claimed by plaintiffs to have been contracted between Edelstein and their mother; for upon that depended the rights of the plaintiff. Edelstein, being upon the stand, testified as a witness in his own behalf, over the objection of the plaintiffs that he was not competent to so testify, that he never was married to the mother of plaintiffs, and that he and she never agreed in any way or form to become husband and wife, and that he never married her; that it was not understood between them at any time prior to her death that she was his wife, or he her husband. The Supreme Court held that Edelstein was not competent under the terms of the statute to so testify. Clearly this was correct; for the suit was for the recovery of property by the heirs of the mother, and any judgment that would or could have been rendered therein would have been rendered for or against them as such heirs. In the Berger Case the plaintiff, Mary Berger, brought suit against the administrator of A. Berger, deceased, to recover property claimed by the plaintiff as the common-law wife of the deceased, and it was held that she was not a competent witness to prove the transaction between deceased and herself in making a contract of marriage. Obviously any judgment rendered in the case would have been for or against Berger's legal representative, the administrator.

[4] The court in approving the bill of exception to its action in sustaining objections to the questions hereinbefore set out added the qualification, in effect, that it was not

made to appear what the answers of the witness to the questions propounded would have been. Appellant contends that the assignment based upon such a bill of exception cannot be considered. We take it that the court meant by the qualification that it was not stated at the time of the ruling and the taking of the exception what the answers of the witness would be if she be permitted to answer. It clearly appears in the bill of exception approved by the court what the witness would have testified in answer to the questions if she had been permitted, and it is not material in a case like this, in which the answer expected and its materialty is apparent from the nature of the question and the issue involved, whether such information was imparted to the trial court at the time the exception was made. Such statements are required to be made in the bill of exceptions as information for the appellate courts in order to enable them to determine whether the excluded testimony was or was not material, and not to aid the trial court to pass upon the competency or admissibility of the evidence objected to. Besides this, the objection urged being that the witness was not competent to testify, and this objection being sustained against her right to testify at all, it could not have made any difference in the trial court's ruling what her answers would have been; for, if she was not competent, the knowledge of the court of what her answers would be could not have removed her. incompetency or affected the ruling of the court. .

The first, second, third, and fourth assignments raising the point discussed must be sustained.

The court instructed the jury as follows:

"The court instructs you that a common-law marriage is legal and valid, and neither the issuance of license or ministerial or official marriage ceremony is necessary to constitute a lawful and binding common-law marriage. All that is necessary to constitute such a marriage is that, if the parties mutually agree and consent together to become husband and wife and thereafter carry out the agreement and live and cohabit together as husband and wife, the marriage would be valid."

The contestant at a proper time requested the court to give the following special instruction:

"You are instructed that, to constitute a valid common-law marriage, it is not necessary that the parties live together for any specified time, nor that they live together continuously for any specified time."

The sixth assignment is based upon the refusal of the court to give this special instruction.

[5] The contestant Nora Walton testified to facts which, if true, were sufficient to establish a common-law marriage between herself and Norton A. Walton, the deceased. The testimony shows, however, that they did not thereafter live together continuously, but that during much of the time between the

date of the alleged marriage and the time the deceased, Walton, left Ft. Madison in company with applicant, Marie Estelle Walton, he was away from the contestant and travelling in or working in various states and places far distant from the contestant. Indeed, the evidence indicates that between said dates he was living away from contestant a greater portion of the time. In view of this fact, we think that the requested charge should have been given in order to clarify the issue raised by the evidence, and in order to keep the jury from falling into the mistaken belief that the court's charge meant that to constitute a valid common-law marriage there must not only be a mutual agreement, but that the agreement should afterwards be carried out by their continuously living and cohabiting together as husband and wife. The assignment is sustained.

We have examined all other assignments of error urged by appellants in their briefs, but, with the exception of those hereinbefore discussed, no reversible error is, in our opinion, pointed out in any of them.

For the errors indicated, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.