### SHARP v. AMERICAN NAT. INS. CO. et al.
### No. 10723.

Court of Civil Appeals of Texas. Galveston.
March 8, 1939.

Randolph Pierson and J. H. Phipps, both of Galveston, for appellant.

Bleecker L. Morse and John H. Austin, both of Galveston, for appellee Frances Parsutt.

CODY, Justice.

This is a stakeholder's suit to have the rights of claimants to the proceeds of two insurance policies, totalling $1,250, determined so that the American National Insurance Company might, with safety, make payments.

Appellant, Mrs. Gladys Sharp, a surviving sister of the insured, who had qualified as temporary administratrix, based her claim to the proceeds on the ground that he had died intestate, unmarried, and without any surviving children.

Appellee, Mrs. Frances Parsutt, based her claim on the ground that she was the beneficiary named in the policies, and that she was his wife. At the time the policies were issued, appellee was undisputedly the wife of the insured, having been duly married to him by a ceremonial marriage. But on March 20, 1937, preceding insured's death on May 6, she had obtained a decree of divorce from him in one of the district courts of Galveston County. However, appellee claimed to have then contracted and consummated a common law marriage with insured; and the jury by their answers to special issues sustained this claim. And the court accordingly rendered the judgment appropriate to the verdict. Mrs. Sharp has appealed.

Appellant claims reversible error on the following grounds:

That the court erred in permitting appellee to testify to acts, transactions, and declarations with the deceased over appellant's objections, even conditionally; and that the court's subsequent withdrawal of such evidence from the jury was not effective, and failed to correct such alleged erroneous admission of her testimony.

That the court erred in refusing to allow appellant to introduce in evidence the sworn petition of appellee, filed by her in her divorce action against the insured.

That the court erred in refusing to set the verdict aside because of the jury's misconduct.

And that the court erred in refusing to instruct a verdict in appellant's favor; also that the jury's verdict was without any support in the evidence; and further, that it was against the great weight of the evidence.

■ While the testimony adduced by appellant and by appellee was very conflicting about other matters, it was undisputed that insured's manner of life was highly irregular. He was severely wounded in February before appellee obtained her decree of divorce. He was fired at in the town of Alvin a short while after the divorce was granted while in the company of a young woman who, according to her testimony, was his paramour; and was finally killed in Galveston. Appellant claimed that after his divorce the insured made his home in Houston, having a room in a sister's home there, and she produced abundant evidence to sustain such contention. Appellee claimed that the insured continued to make his home in Galveston, and produced abundant evidence to sustain her contention. It was not disputed that he frequently spent days and nights in Houston, and that he frequently spent days and nights in Galveston, and that he frequently spent days and nights at neither place. There was sufficient evidence to sustain the finding that the insured and appellee agreed, after they were divorced, that they were married, and thereafter cohabited as husband and wife, claiming that they were married, and holding each other out to the public to be man and wife, and were living together and cohabiting as man and wife. There was also sufficient evidence to have sustained an adverse finding on appellee's claim. We see no good reason to set out in detail this conflicting evidence.

■ We also overrule appellant's assignment of error complaining of the court's refusal to permit the introduction of appellee's sworn petition wherein she sought a divorce from the insured on the allegation that living with him was insupportable. If this refusal were error, and we do not hold that it was, it was harmless. The decree of divorce was in evidence, and showed that it had been granted to appellee, and showed the ground on which it was granted. Appellee testified freely as to the cat-and-dog life she and the insured had lived together. The allegation in such petition that living with her husband was insupportable was not one of fact, but one of a condition that existed, or of her conclusion, and a condition or conclusion

is, of course, subject to change. Besides, such allegation of the petition was merely cumulative of other evidence to the same effect by appellant, and could not have impeached anything to which she (appellee) testified, and was not a declaration against interest. The authorities cited by appellant to the effect that the allegations of the pleadings of a party in another suit may be introduced against him are not here in point.

The present suit is, in effect, one by an insurer to determine whether the beneficiary named in policies which it had issued has an insurable interest in the insured; i. e., whether she was the wife of the insured; or whether the proceeds of the policy should be paid to the representative of the insured's estate. On their face the policies were payable to appellee. The fact that the insured permitted them to continue to remain so payable with the full knowledge that his life was being sought by others, and of the probability that he might be killed at any moment, was not only consistent with the appellee's claim that she became his wife immediately following the divorce and remained such until his death, but is itself a circumstance from which marriage between the parties could be inferred. In a suit by her on the policies against the insurer to collect their proceeds, she could have testified to transactions with, or statements by the insured (intestate), notwithstanding Art. 3716, R.S.1925. Traders' & General Insurance Co. v. Baldwin, Tex.Civ.App., 50 S.W.2d 863; Floyd v. Fidelity Union Casualty Co., Tex.Civ.App., 13 S.W.2d 909, reversed on other grounds, Tex.Com. App., 24 S.W.2d 363, 39 S.W.2d 1091. And see Walton v. Walton, Tex.Civ.App., 191 S.W. 188; Jackson v. Hughes, Tex. Civ.App., 52 S.W.2d 687, 688. The proceeds of the policies would belong to the estate of the insured only in case the beneficiary named in them had no insurable interest in the insured. Certainly had appellee brought suit against the Insurance Company on the policies, and had the temporary administratrix not been a party to the suit, Art. 3716 would have been no obstacle to appellee proving up her marriage with the insured, by her testifying to transactions with, or statements of, the intestate. As against the Insurance Company this was a valuable right. And when, or if, appellee established her insurable interest in the insured, the result would be to establish that the administratrix had no right whatever to the proceeds of the policy. The right of the Insurance Company to bring suit as a stakeholder, and to join appellee and appellant in one action, does not change the character of the action, nor deprive appellee of her right to prove that she was the wife of the insured at his death, nor can this right of the Insurance Company be construed to make it more onerous on appellee to make such proof. It is for the convenience and benefit of the Insurance Company, and not for that of the administratrix, that appellee could be required to be joined as a party in the same action with appellant to determine who has the better right thereto—not inter sese, but as against the insurer. It would be only after it was established that appellee had no insurable interest in the intestate, that any right would arise in appellant against the insurer to the proceeds of the insurance. So the fact that the court permitted appellee to testify, in the first instance, to transactions with and statements by the deceased, was not error. But even if this had been error, we are unable to see why it was not rendered harmless by instructing the jury to disregard such evidence. It is on the rarest occasions that it can happen that the harm caused by erroneous admission of evidence can not be removed by instructing the jury to disregard it, though it would be a practice not to be commended, to admit evidence, expecting to later control its effect on the jury.

We also overrule the assignments of error based on misconduct of the jury. The learned trial court heard the evidence relative to the alleged misconduct, and after such hearing made specific findings or rulings with reference thereto, which are too long to be here set forth. The evidence relative to misconduct was conflicting. Under the authority of the case of Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770, we sustain his ruling.

Concluding that there is no reversible error in the record of this case, the judgment is affirmed.

Affirmed.